NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0113n.06

Case No. 15-5907

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 29, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SCOTT FOLTZ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| BARNHART CRANE AND RIGGING, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants, | ) | O P I N I O N |
| | ) | |
| TENNESSEE VALLEY OPERATING | ) | |
| ENGINEERS HEALTH FUND, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: KEITH, COOK, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Scott Foltz was working at an oil refinery when

he was exposed to some "vapor, chemical or toxic substance" and began having difficulty

breathing. He was diagnosed with acute respiratory distress syndrome caused by chemical

pneumonia or chemical pneumonitis, and he was hospitalized for over three months. Foltz filed

a claim for benefits with his insurer, defendant Tennessee Valley Operating Engineers Health

Fund (the Fund). The Fund denied Foltz's claim, and the Fund's Board of Trustees upheld the

denial on appeal because Foltz's medical documentation showed that his illness was work-

related, and was therefore covered by workers' compensation instead of the Fund's insurance plan. The district court granted judgment to the Fund, holding that the Board's decision was not arbitrary or capricious. After reviewing the administrative record, we agree and affirm.

## I

Scott Foltz worked for Barnhart Crane and Rigging, Inc. As a member of the Tennessee Valley Operating Engineers Union, Foltz was insured by the Fund. The Fund is administered by a Board of Trustees and its third party administrator and is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The Fund grants the Board of Trustees discretion to interpret its insurance plan, determine whether an employee is entitled to benefits on a claim, and hear appeals from the denial of benefits.

On Wednesday, March 13, 2013, Foltz was working at the Valero oil refinery in Memphis, Tennessee, when he began to have trouble breathing after being exposed to some "vapor, chemical or toxic substance."[1] R. 1-3, Complaint at 3, Page ID 10. Foltz went to nurse practitioner Lance Harrell, his primary care medical professional, who directed him to Crittenden Regional Hospital in West Memphis, Arkansas. Foltz was admitted to the Intensive Care Unit (ICU), and he was placed in a medically induced coma on March 14 after his condition worsened. He was transferred to Methodist University Hospital's ICU in Memphis on March 15, where he remained until June 14. Foltz was discharged from Methodist on June 20, 2013.

Foltz's daughter submitted a disability claim with an attending physician's statement to the Fund on March 24, 2013. The disability claim lists Foltz's illness as acute respiratory distress syndrome (ARDS) due to chemical pneumonitis. R. 29-3, Disability Claim, A.R. 432,

---

[1] The fact that Foltz was exposed to "some vapor, chemical or toxic substance" comes from his complaint and is not in the administrative record. Thus, it was not in the record before the Board of Trustees when it made its decision and does not influence our analysis here. *See, e.g.*, *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015) ("Under either de novo review or arbitrary-and-capricious review, generally a court may consider only the evidence available to the administrator at the time the final decision was made.").

Page ID 574. On the claim form, his daughter answered "Yes (possibly)" when asked whether Foltz's disability was due to his occupation. *Id.* On the attending physician's statement, nurse practitioner Harrell noted that the primary diagnosis was ARDS and the secondary diagnoses were chemical pneumonia and acute renal failure. R. 29-3, Attending Physician's Statement, A.R. 433, Page ID 575. Harrell answered "Yes" on the form when asked whether Foltz's condition was "due to injury or illness arising out of [his] employment." *Id.*

The Fund's plan includes an exclusion whereby "[n]o benefits will be payable for charges incurred . . . [a]s the result of a disease or sickness or illness for which benefits are payable under any Worker's Compensation Act or any Occupational Disease Act or any such similar law." R. 28-3, Fund Plan at 44–45, A.R. 141–42, Page ID 280–81. Accordingly, the Fund denied benefits for Foltz's medical bills because it determined that Foltz's illness was work-related and covered by the Tennessee Workers' Compensation Law, rather than the Fund's plan.

Foltz appealed the denial of benefits to the Fund's Board of Trustees on June 25, 2013. Foltz did not, however, present any evidence refuting the Fund's determination that his illness was work-related; in fact, he did not even raise the argument. The Board unanimously agreed that there were no grounds to overturn the denial of benefits because the medical documentation provided by Foltz indicated that his illness was the result of chemical fumes he inhaled on the job site.

Foltz filed suit in Tennessee state court against various defendants, including the Fund, his employer, and his workers' compensation carrier. The defendants removed to district court. Foltz's claims against his employer and workers' compensation carrier were remanded to state court,[2] and all other claims were dismissed aside from Foltz's claim against the Fund. The district court then granted judgment to the Fund on the ERISA record, holding that the Board of

---

[2] Foltz has since voluntarily dismissed his state claims against his employer and his workers' compensation carrier.

Trustees' decision that Foltz's injuries were work-related—and that therefore Foltz was not entitled to benefits—was not arbitrary or capricious. Foltz timely appealed.

**II**

We review the district court's decision to uphold the denial of benefits de novo. *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 546–47 (6th Cir. 2015) (citation omitted). If the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan, however, we review the denial of benefits only to determine if it was arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063–64 (6th Cir. 2014) (citations omitted). Here, the parties agree that the Fund's plan affords the Board of Trustees discretion to determine eligibility for benefits, and thus we review the Board's decision to uphold the denial of Foltz's claim under the arbitrary and capricious standard.

This standard is the "least demanding form of judicial review," *McClain*, 740 F.3d at 1064, and we will uphold a benefits determination if it is "rational in light of the plan's provisions." *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003) (citation omitted). A decision is not arbitrary or capricious if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome[.]" *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). The Board of Trustees' decision easily clears this low hurdle.

Under the applicable exclusion in the Fund's plan, an employee cannot receive benefits for charges that result from an illness for which benefits are payable under "any Worker's Compensation Act." R. 28-3, Fund Plan at 44–45, A.R. 141–42, Page ID 280–81. In Tennessee, "when a work-related injury arises out of and in the course of employment, an employee's only

option is to proceed under the [Tennessee Workers' Compensation Law]." *Frayser v. Dentsply Int'l, Inc.*, 78 S.W.3d 242, 249 (Tenn. 2002) (citing Tenn. Code Ann. §§ 50-6-108, 50-6-114(a)); *see also Scott v. AMEC Kamtech, Inc.*, 412 F. App'x 818, 820–21 (6th Cir. 2011). Thus, if the Board offered a "reasoned explanation" for determining that Foltz's illness was work-related and covered by the Tennessee Workers' Compensation Law, its decision to uphold the Fund's denial of benefits was not arbitrary or capricious.

As an initial matter, Foltz points out that the district court placed the burden on him to prove that he was entitled to benefits. When an ERISA plan relies on an exclusion to deny benefits, however, the plan (not the employee) has the burden of proving that the exclusion applies. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443 (6th Cir. 2005) (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002)). Here, the Fund relied on an exclusion—that Foltz's injuries occurred on the job and were covered by the Tennessee Workers' Compensation Law—to deny benefits. Therefore, the Fund had the burden of proving Foltz's illness was work-related, and the district court erred by placing the burden on Foltz. Regardless, the evidence in the administrative record clearly shows that the Fund carried its burden to establish that Foltz's illness was, in fact, work-related. *See Kilburn v. United States*, 938 F.2d 666, 677 (6th Cir. 1991) (concluding that any error was harmless because applying the correct standard would not have changed the outcome of the case).

Foltz first argues that the Board's decision to uphold the denial of his claim was not supported by substantial evidence. But his argument carries little weight, as his own documentation supports the Board's conclusion. Foltz's nurse practitioner indicated that his illness arose out of his employment. His daughter noted that it was "possibly" due to his occupation. Both agreed that Foltz's ARDS was connected to chemical pneumonitis or chemical

pneumonia. And Foltz was working at a refinery where he could be exposed to chemicals during the onset of his symptoms. This evidence was sufficient for the Fund to carry its burden to show that Foltz's illness was work-related.

Moreover, when Foltz appealed to the Board of Trustees, he did not even *argue* that his illness was not work-related, let alone provide any evidence to support that argument. So while the Fund had the burden to prove the exclusion applied, it provided evidence—in the form of Foltz's own medical documents—to carry its burden. Foltz, on the other hand, offered nothing to rebut that evidence. He now asserts that the Fund had an affirmative burden to further investigate his illness and provide more evidence, but doing so was unnecessary. Foltz provided all the evidence the Board of Trustees needed to make a decision—albeit one unfavorable to him.

Finally, Foltz incorrectly asserts that the Fund and the Board of Trustees operate under an inherent conflict of interest. To the contrary, the Fund is a multi-employer benefit plan with no profit motive, and the individual trustees on the Board receive no personal financial benefit from approving or denying claims. This structure does not create an inherent conflict of interest, and in any event the record contains no evidence that cost savings influenced the Board's decision. *See Klein v. Cent. States, Se. & Sw. Areas Health & Welfare Plan*, 346 F. App'x 1, 5 (6th Cir. 2009); *Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989).

**III**

The only evidence in the administrative record supports the conclusion that Foltz's illness was work-related and covered by the Tennessee Workers' Compensation Law, rather than the Fund's insurance plan. As such, we hold that the Board of Trustees' decision to uphold the Fund's denial of Foltz's claim was not arbitrary or capricious, and we affirm the district court's decision to grant judgment to the Fund.